**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RE:                                )<br><br>Sima Schwartz a/k/a        )<br>Sima M. Shwartz             )<br>    Debtor                  )<br>_____) | CHAPTER 7<br>CASE NO. 06-42476 |

**MOTION OF HOMEQ FOR RELIEF FROM STAY**

To: The Honorable Joel B. Rosenthal, U.S. Bankruptcy Judge,

Now Comes HomEq Servicing Agent for Deutsche Bank National Trust Company, as Trustee, assignee and successor in interest to Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC ("HomEq"), and hereby moves this Court, pursuant to 11 U.S.C. § 362(d) (2), Bankruptcy Rules 4001-1 and 9014, for relief from the automatic stay of 11 U.S.C. § 362(2) so that HomEq may consummate its eviction on a certain real property commonly known as 23 Sigel Street, Worcester, MA 01610, title to which is believed to be held by Deutsche Bank, pursuant to the foreclosure auction dated May 24, 2006, and so HomEq may evict the Debtor and all other occupants from the mortgaged premises. HomEq is entitled to relief from the automatic stay on the grounds that: the debtor filed for bankruptcy after the foreclosure auction and after title was transferred to Deutsche Bank National Trust Company, as Trustee under Pooling and Servicing Agreement dated as of November 1, 2005 in an attempt to stop the eviction.

In further support of this motion, HomEq respectfully alleges as follows:

1. On or about July 22, 2005, Sima Shwartz, executed and delivered a note in the amount of two hundred seventy two thousand & 00/100 ($272,000.00) dollars to Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC. *See* Exhibit A (a true and correct copy of the Note is attached hereto.)

2. To secure the obligation, Sima Shwartz executed and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC a mortgage dated July 22, 2005, and recorded in the Worcester County Registry of Deeds, in Book 36911, Page 349 on property located at 23 Sigel Street, Worcester, MA. *See* Exhibit B (a true and correct copy of the Mortgage is attached hereto.)

3. The Mortgage was then assigned to Deutsche Bank National Trust Company, as Trustee on June 14, 2006. *See* Exhibit C (a true and correct copy of the recorded assignment is attached hereto.)

4. Upon information and belief, Deutsche is the current holder of the mortgage on the property.

5. On November 13, 2006, Sima Schwartz a/k/a Sima M. Shwartz filed a voluntary petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code.

6. There was a foreclosure sale held on May 24, 2006 on the premises located at 23 Sigel Street, Worcester, MA. The property was purchased by the bank. *See* Exhibit D (a true and correct copy of the Foreclosure Deed is attached hereto.)

7. The foreclosure sale took place before the debtor filed for Bankruptcy.

8. Based on the foregoing, HomEq is entitled to relief, pursuant to 11 U.S.C. § 362(d) (2), for cause on the grounds that the Debtor filed for bankruptcy after the foreclosure sale commenced.

WHEREFORE, HomEq respectfully requests that this Honorable Court grant it and its successor and/or assigns relief from stay pursuant to 11 U.S.C. §362(d) by modifying the stay to permit it to exercise its rights under its agreements with the debtor and under applicable law including but not limited to eviction on property located at 23 Sigel Street, Worcester, MA; and to pursue its remedies under state law including, but not limited to, the eviction of any and all occupants of said premises, that the relief granted in this order is not be stayed pursuant to Federal

Rule of Bankruptcy 4001(a) (3), together with such other and further relief as this Court may deem just and proper.

                                      HomEq
                                      By its counsel,

DATED: December 7, 2006         /s/ Reneau J. Longoria
                                      Reneau J. Longoria, Esq. (BBO# 635118)
                                      John A. Doonan, Esq. (BBO# 547838)
                                      Doonan, Graves, & Longoria, LLC
                                      100 Cummings Center, Suite 213C
                                      Beverly, MA 01915
                                      Tel. (978) 921-2670

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

July 22, 2005                PROVIDENCE                Rhode Island
[Date]                          [City]                    [State]
                         23 SIGEL STREET
                        WORCESTER, MA 01610

[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $272,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **FIRST NLC FINANCIAL SERVICES, LLC.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.5900%. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payments on the first day of each month beginning on **September 01, 2005**.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 01, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at **FIRST NLC FINANCIAL SERVICES, LLC., 700 W Hillsboro Blvd. B-1 #204, Deerfield Beach, Florida 33441**

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,918.65. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family

*(Page 1 of 4 pages)*                    FNLC Form 33019L1 (04052005)

3058504777
100195910000811110





### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of **August 2008**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Seven and 34/100ths** percentage points ( 7.3400%) to the Current Index. Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.5900% or less than 7.5900%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and One Half** percentage points ( 1.5000%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.5900% or less than 7.5900%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   (A) **Late Charges for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   (B) **Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   (C) **Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   (D) **No Waiver By Note Holder**
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
   (E) **Payment of Note Holder's Costs and Expenses**
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
   Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

100195910000811110        (Page 3 of 4 pages)        FNLC Form 3301913 (04052005)

55

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(illegible signature)_____ (Seal)  _____ (Seal)
SIMA SHWARTZ                     -Borrower                                -Borrower


_____ (Seal)  _____ (Seal)
                            -Borrower                                -Borrower


_____ (Seal)  _____ (Seal)
                            -Borrower                                -Borrower


*[Sign Original Only]*

100195910000811110        (Page 4 of 4 pages)        FNLC Form 33019L4 (04052005)

After Recording Return To:
FIRST NLC FINANCIAL SERVICES, LLC.
700 W. HILLSBORO BLVD. B-1 #204
DEERFIELD BEACH, FLORIDA 33441



Bk: 36911 Pg: 349    Doc: MTG
Page: 1 of 19    07/28/2005 09:17 AM

―――――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――――

# MORTGAGE

MIN: 100195910000811110

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 22, 2005               , together with all Riders to this document.

(B) "Borrower" is SIMA SHWARTZ, AN UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is FIRST NLC FINANCIAL SERVICES, LLC.
Lender is a Limited Liability Company                                organized and existing under
the laws of the State of Florida                                      . Lender's address is
700 W. HILLSBORO BLVD. B-1 #204, DEERFIELD BEACH, FLORIDA 33441

(E) "Note" means the promissory note signed by Borrower and dated July 22, 2005               . The Note states that Borrower owes Lender Two Hundred Seventy Two Thousand and no/100
Dollars (U.S. $ 272,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 01, 2035

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3022 1/01
                                                                                      GREATLAND ■
ITEM 2690L1 (0011)—MERS                    (Page 1 of 12 pages)      To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

SS

(handwritten margin note: MA / Worcester / Sigel Street / 23)



EXHIBIT B

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider        [ ] Condominium Rider              [ ] Second Home Rider

[ ] Balloon Rider                [ ] Planned Unit Development Rider [ ] Other(s) [specify]

[X] 1-4 Family Rider             [ ] Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3022 1/01
                                                                                 GREATLAND ■
ITEM 2580L2 (0011)—MERS                    (Page 2 of 12 pages)         To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

SS

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **WORCESTER** :
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION**

which currently has the address of **23 SIGEL STREET**
[Street]

**WORCESTER** , Massachusetts **01610** ("Property Address"):
[City]    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022 1/01
ITEM 2880L3 (0011)—MERS    *(Page 3 of 12 pages)*    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 through 3 of this 1-4 Family Rider.

_____*Ulbaric*_____ (Seal)  _____ (Seal)
SIMA SHWARTZ           -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                       -Borrower                              -Borrower

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01

ITEM 1790L3 (0011)            (Page 3 of 3 pages)            GREATLAND ®
                                                             To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Record and Return to:
Doonan, Graves, & Longoria
Attn: Kerry A. Pass
100 Cummings Center, Suite 213C
Beverly, MA 01915



Bk: 39359 Pg: 41 Doc: ASM
Page: 1 of 1  07/12/2006 04:05 PM

## ASSIGNMENT OF MORTGAGE

Know that, for valuable consideration, Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC ( ASSIGNOR ), hereby sells, assigns, and transfers to Deutsche Bank National Trust Company as Trustee ( ASSIGNEE ), whose mailing address is 4837 Watt Avenue, North Highlands, CA the Assignor s interest in a certain mortgage made by Sima Shwartz to Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC dated July 22, 2005 and recorded in the Worcester County (Worcester District) Registry of Deeds in Book 36911, Page 349, describing land therein as:

**23 Sigel Street, Worcester, MA**

Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC, Assignor

Dated: 6/14/06

By: John H. Dunnery
Its: VP

### CORPORATE ACKNOWLEDGMENT

State of NC
County of Wake ) ss.

On the 14 day of June in the year 20 06 before me, the undersigned, personally appeared John H. Dunnery, personally known to me or proved to me on the basis of satisfactory evidence, which were drivers licenses to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and on behalf of Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of Wake, in the State of NC.

Notary Public
My commission expires: 2-3-10

CELIA L. PIERCE
NOTARY PUBLIC
Wake County, North Carolina
My Commission Expires February 3, 2010

ATTEST: WORC. Anthony J. Vigliotti, Register

EXHIBIT

Bk: 39958 Pg: 225 Doc: FC
Page: 1 of 4  10/13/2006 11:21 AM

# FORECLOSURE DEED

Deutsche Bank National Trust Company, as Trustee, having it's usual place of business at 4837 Watt Avenue, North Highlands, CA, holder of a mortgage from Sima Shwartz to Mortgage Electronic Registration Systems, Inc., as nominee for First NLC Financial Services, LLC dated 7/22/2005, and recorded with the Worcester County (Worcester District) Registry of Deeds at Book 36911, Page 349, by the power conferred by said mortgage and every other power, for Two Hundred Twenty Five Thousand and 00/100 ($225,000.00) dollars paid, grants to DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee under POOLING AND SERVICING AGREEMENT dated as of November 1, 2005, with a mailing address of: 4837 Watt Avenue, North Highlands, CA, the real property with the buildings and improvements thereon, if any, situated in Worcester, Worcester County, Massachusetts, which real property is fully described in Schedule "A" attached hereto and made part hereof by reference, being the premises conveyed by said Mortgage.

PROPERTY ADDRESS:    23 Sigel Street
                     Worcester, MA  01610

Executed under seal the 7_ day of September, 2006 as the free act and deed of Deutsche Bank National Trust Company, as Trustee by HomEq Servicing Corporation its Attorney in Fact, by John A. Dunnery, its Vice President and Jeff Szymendera its Vice President.

\* Power of Attorney recorded in Book 33822 Page 354

by: _____
its: Vice President

by: _____
its: Vice President

**STATE OF North Carolina**

Wake, SS County                                    DATE: September 7, 2006

On this 7th day of Sept, 2006, before me, the undersigned Notary Public, personally appeared John A. Dunnery its Vice President and Jeff Szymendera its Vice President, proved to me through satisfactory evidence of identification, which were drivers licenses to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose and that the foregoing instrument is the free act and deed of Deutsche Bank National Trust Company, as Trustee by HomEq Servicing Corporation its Attorney in Fact, before me

EDGETON MONROE
NOTARY PUBLIC
Wake County
North Carolina
My Commission Expires October 27, 2010

Notary Public
My Commission Expires:

P:\Massachusetts Foreclosures\Generated_Forms\Foreclosure Deed_Foreclosure_Shwartz_2320.15

Doonan Graves Long-MA LLC
100 Cummings Center
Beverly MA 01915

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 10/13/2006 11:21 AM
Ctrl# 057545 17432 Doc# 00154210
Fee: $1,026.00 Cons: $225,000.00

EXHIBIT D

# Schedule "A"

The land with the buildings thereon, situated on the southerly side of Sigel Street in the City of Worcester, County of Worcester, Commonwealth of Massachusetts, bounded and described as follows:

BEGINNING at a point at an iron pipe set in the southerly line of Sigel Street, said point being S. 79 degs. 45' 00" E. sixty-nine and no hundredths (69.00) feet from the intersection of said line of Sigel Street with the easterly line of Bigelow Street;

THENCE S. 50 degs. 30' 55" E. by Parcel B, eleven and forty-three hundredths (11.43) feet to an iron pipe set at a point;

THENCE S. 10 degs. 32' 58" W. by Parcel B, fifty-two and twenty-eight hundredths (52.28) feet to an iron pipe set at a point;

THENCE N. 79 degs. 45' 00" W. by Parcel B, thirty-five and no hundredths (35.00) feet to an iron pipe set at land now or formerly of Stephen J. Nenninger;

THENCE N. 10 degs. 32' 58" E. by said land of Nenninger and land now or formerly of Sofie Holowy, fifty-seven and eighty-six hundredths (57.86) feet to a point in the southerly line of Sigel Street;

THENCE S. 79 degs. 45' 00" E. by said line of Sigel Street, twenty-five and no hundredths (25.00) feet to the point of beginning.

Being delineated as Parcel A on a plan entitled "Land in Worcester, Massachusetts Prepared for 23 Sigel Street Realty Trust" dated February 22, 2002 and prepared for filing with the Worcester District Registry of Deeds in Plan Book 779, Plan 26, by Bouley Brothers, Inc., Professional Land Surveyors, Worcester, Massachusetts.

For my title see deed from Shahreh Emrari, trustee 23 Sigel Street Realty Trust, trust dated 10/1/97 in Book 19226, Page 14.