**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| SIMA SCHWARTZ a/k/a, | : | CASE NO. 06-42476-JBR |
| SIMA M. SHWARTZ | : | |
| DEBTOR | : | |

**MEMORANDUM OF DECISION ON MOTION FOR RELIEF**

     This matter came before the Court for hearing on the second "Motion of HomEq for Relief from Stay" [docket #31] to pursue an action to evict the Debtor from property located at 23 Sigel Street, Worcester, Massachusetts (the "Property"). As with its previous unsuccessful motion for relief [docket #10], HomEq Servicing Corporation ("HomEq") claims that a proper foreclosure sale was conducted prior to the commencement of the Debtor's bankruptcy. The Debtor does not dispute that the sale occurred prepetition but argues, as she did in her prior opposition, that it was not properly conducted because the correct party did not conduct the sale.

     As many homeowners know or come to learn, it is not uncommon for notes and mortgages to be assigned, often more than once. When the role of a servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees. On more than one occasion this Court has heard debtors complain that they did not know to whom or where they were supposed to send their mortgage payments. In fact the Court has observed instances in which attorneys representing alleged mortgagees or their servicing agents did not know whether the client was a mortgagee or a serving agent, or how their client came to acquire its role. When this

*pro se* Debtor found herself in just such a situation, she challenged whether the correct party brought and conducted the foreclosure proceedings.  When HomEq was required to prove its authority to conduct the sale, and despite having been given ample opportunity to do so, what it produced instead was a jumble of documents and conclusory statements, some of which are not supported by the documents and indeed even contradicted by them.

The Court has drawn the facts from the documents provided by HomeEq or the party which appears to be the present mortgagee, Deutsche Bank National Trust Company, as Trustee ("Deutsche"), as well as documents attached to the Debtor's previous opposition.  Neither party requested an evidentiary hearing.  The parties should be aware that the Court spent considerable time sifting through the various documents they provided.  The Court, however, cautions the parties, especially the movant, that it is not the Court's responsibility to ferret out the facts to determine if the movant has met its burden of proof.  In the future should movants seeking relief fail to set forth the necessary facts, including complying with MLBR 4001-1(b)(2)(F),[1] the Court will deny the motions summarily.  As one court has stated:

> [t]his Court should not, and cannot, be required to sift
> through multifarious documents and testimony in an effort to
> congregate those facts which are necessary to establish a
> party's action or defense. Rather, it is the duty of the litigants
> to present their evidence in a manner which logically,
> systematically, and efficiently leads to the conclusion sought.

---

[1] MLBR4001-1(b)(2)(F) requires the movant to state "the original holder of the obligations... and every subsequent transferee, if known to the movant...."  Despite the fact that HomEq produced documents in which it claimed to be the servicing agent for at least one other subsequent transferee, namely Ocwen Federal Bank, FSB, it failed to disclose such information in either of its two motions for relief.

> If the evidence does not clearly establish the basis, upon which the Court can, in an independent review, determine liability, the litigants have effectively failed to meet their burden of proof with regard to their respective position in the case. As a result, judgment cannot be granted to the extent the elements of an action or defense are not clearly demonstrable in the record.

*McGraw v. Allen (In re Bell & Beckwith)*, 64 B.R. 620, 635 (Bankr. N.D. Ohio 1986).

**FACTS**

On July 22, 2005 the Debtor signed a promissory note in the amount of $272,000 in favor of First NLC Financial Services, LLC. ("First NLC"). The note was secured by a mortgage on the Property. The mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS") acting solely as the nominee for First NLC and its successors and assigns. By letter captioned "Validation of Debt" and dated November 7, 2005, HomEq informed the Debtor that it was the servicing agent for Ocwen Federal Bank FSB ("Ocwen"), which the letter identified as the creditor with respect to the mortgage.[2] There is nothing in the record to indicate that MERS or First NLC informed the Debtor of the placement of the mortgage with Ocwen.[3] By letter dated January 17, 2006 HomEq, which stated in the letter that it was the servicing agent for Deutsche, sent the Debtor a default letter. Again there is nothing in the record to indicate that the MERS or First NCL (or even Ocwen) notified the Debtor of the purported assignment.

---

[2] The November 7, 2005 letter specifically references the date of the creation of the loan as July 22, 2005 and the amount of the loan at the time Ocwen received the obligation ($271,602.25) and states that the note was placed for servicing with HomEq on November 1, 2005.

[3] This is the only instance in which Ocwen's name appears. As discussed later, there are two purported assignments of the mortgage to Deutsche. Both are allegedly executed by MERS.

In March 2006 Deutsche, representing that it was the assignee of the mortgage, filed a complaint to foreclose mortgage which the land court subsequently allowed. A "Notice of Intent to Foreclose and Intent to Pursue Deficiency After Foreclosure of Mortgage" dated May 5, 2006 was sent to the Debtor. The letter was signed by Deutsche as Trustee by its attorneys, Doonan, Graves, & Longoria L.L.C. On May 23, 2006 the land court entered its judgment permitting Deutsche to conduct the foreclosure. A foreclosure sale was held on May 24, 2006 at which Deutsche purchased the property. As reflected in the Certificate of Entry to Foreclose dated May 24, 2006, the witnesses certified that Attorney Longoria "duly authorized agent of Deutsche Bank National Trust Company, as Trustee pursuant to authority contained in a Power of Attorney recorded herewith" made entry upon the premises. The referenced Power of Attorney was not produced to the Court. On September 7, 2006 a foreclosure deed in favor of Deutsche was executed. The foreclosure deed is signed by John A. Dunnery[4] and Jeff Szymendera, both identified as vice presidents of HomEq. The foreclosure deed has a handwritten notation referencing a "power of attorney recorded in book 33822 page 354." The Court was not given a recorded copy of the foreclosure deed or the recorded power of attorney. The Court, however, was provided with an unrecorded copy of a "Uniform Durable Power of Attorney" that is dated September 18, 2006. The power of attorney purports to be from Deutsche, which the document identifies as the current mortgagee, and appoints "Reneau J. Longoria", among others, as its attorney "to do all acts authorized or required by the power of sale

---

[4] As Mr. Dunnery's signature is illegible, the Court refers to the jurat which lists John A. Dunnery, vice president of HomEq as one of the signatories.

contained in said mortgage, for the purpose of foreclosing said mortgage upon breach of conditions thereof, and further to make open, peaceable and unopposed entry on the premises described in said mortgage, for the purpose of foreclosing said mortgage for the breach of conditions thereof." The power of attorney is signed by Jeff Szymendera as Deutsche's attorney in fact. As other documents establish, Mr. Szymendera is a vice president of HomEq.

There are two documents captioned "Assignment of Mortgage" among the papers provided to the Court.[5] The earlier of the two is an assignment dated May 23, 2006 pursuant to which MERS as nominee for First NLC assigned its or First NLC's interest in the mortgage to Deutsche. The document is "signed"[6] by a vice president of MERS. Interestingly this document was attached to the Debtor's submissions. A duplicate copy is not to be found in among Deutsche's papers. Instead Deutsche submitted an assignment of mortgage that was dated June 14, 2006 and signed by John A. Dunnery whom the assignment identifies as a vice president of MERS.[7] In its "Memorandum in Response to Court Order dated February 8, 2007 [docket #61], Deutsche states that the assignment was *recorded* on June 14, 2006. The copy of the assignment it attached to that Memorandum is not a recorded copy and reflects that the

---

[5]There is no indication in the record whether the note was also assigned or who the current holder of the note is.

[6]The signature appears to be little more than a very large check mark attached to a downward line. A stamp of the individual's name and title identifies the signor as Liquenda Allotey, a vice president of MERS.

[7]The Court believes this to be the same individual whom the foreclosure deed identifies as a vice president of HomEq.

assignment was *executed* on June 14, 2006.  Moreover the jurat signed by the notary public states that John A Dunnery, on behalf of MERS, personally appeared before the notary and executed the assignment on June 14, 2006.  There is nothing in the record to indicate whether Ocwen, on whose behalf HomEq had previously sent the Validation of Debt letter, transferred the mortgage back to MERS or whether HomEq was simply incorrect when it claimed Ocwen was the mortgage holder in November 2005.

On November 13, 2006 the Debtor, who is acting *pro se*, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code.  On December 10, 2006 HomEq filed its first Motion for Relief [docket #10] to which the Debtor objected.  The Court denied HomEq's first motion for relief and cautioned that it was not persuaded that the moving party was the proper party to bring the motion.  On January 8, 2007 HomEq filed its second motion for relief.  At the hearing on the second motion for relief, the Court raised the same concerns, and provided each party with an opportunity to submit memoranda of law in support of their positions.

**DISCUSSION**

Deutsche filed a memorandum providing a broad overview of foreclosure procedure in Massachusetts, and dealing with MERS right to act as a nominee to conduct foreclosure proceeding, a point it acknowledges is irrelevant to this proceeding.  Unfortunately it glosses over the critical element in this controversy.  It simply assumes that the mortgage was properly assigned to it prior to the foreclosure.  Indeed Deutsche states in its memorandum that "[t]here is no requirement that an assignment be recorded prior to the foreclosure."  While this is a correct statement of the law, *Lamson v. Abrams*, 305 Mass. 238, 241, 25 N.E.2d 374 (1940), it ignores that the assignment *it*

provided to the Court was not *signed* until *after* the foreclosure sale. Acquiring the mortgage after the entry and foreclosure sale does not satisfy the Massachusetts statute.[8] While "mortgagee" has been defined to include assignees of a mortgage, in other words the current mortgagee, there is nothing to suggest that one who expects to receive the mortgage by assignment may undertake any foreclosure activity. *Cf. Id.*

That Deutsche did not produce the assignment dated May 23, 2006, which is the one attached to the Debtor's opposition, suggests to the Court that Deutsche itself questioned the validity of the May assignment. Moreover the Court notes that even if the May assignment were the operative one, Deutsche represented that it was the mortgagee far earlier, including in documents filed with the land court and in the notices published in the newspaper suggesting that Deutsche is confused as to when it acquired the mortgage. When the question of what place, if any, Ocwen had in the chain of mortgagees, the Court concludes that HomEq and Deutsche were careless in their documentation, a problem that falls squarely upon them.

In addition many of the crucial documents, including the power of attorney authorizing Attorney Longoria to conduct the foreclosure sale was executed by HomEq

---

[8] M.G.L. c. 244, § 1 provides
   A *mortgagee* may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it, or by action under this chapter; and possession so obtained, if continued peaceably for three years from the date of recording of the memorandum or certificate as provided in section two, shall forever foreclose the right of redemption. (Emphasis added).

which, although representing that it is the attorney-in-fact for Deutsche, failed to produce any documentation as to its status. Furthermore the power of attorney signed in September 2006 states that it "shall be construed as a Uniform Durable Power of Attorney pursuant ot M.G.L. Chapter 201B" despite the fact that such powers of attorney are usually seen only in circumstances where the parties are concerned about the future incapacity of the principal to conduct his affairs. Although the Uniform Durable Power of Attorney executed in the instant case lacks the statutorily-mandated expression of an intent to continue the principal and attorney-in-fact relationship in the event of the principal's incapacity, § 1(a) is very explicit that a durable power of attorney must be in writing. Therefore it appears that Deutsche had not yet authorized the attorneys to act on its behalf when the foreclosure sale was conducted.

**Conclusion**

      For the foregoing reasons, the Court cannot find that the foreclosure sale was proper and therefore the Motion for Relief [#31] is DENIED. A separate order shall issue.

*/s/ Joel B. Rosenthal*

Dated: April 19, 2007                _____
                                         Joel B. Rosenthal
                                         United States Bankruptcy Judge